IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER NYAMU,<br>            **Plaintiff,**<br><br>v.<br><br>MERCK & CO.,<br>            **Defendant.** | CIVIL ACTION<br><br><br><br><br>NO.  22-4788 |

HODGE, J.                                                                                                September 8, 2025

### MEMORANDUM

Plaintiff Peter Nyamu ("Nyamu" or "Plaintiff") claims that his employer Merck Sharp & Dohme LLC ("Merck" or "Defendant") created a hostile work environment of sexual harassment due to his sex (Count II) and retaliated against him for reporting this harassment (Count I). Plaintiff brings these claims under Title VII of the Civil Rights Act of 1964 ("Title VII"). Before the Court are Plaintiff and Defendant's respective cross-motions for summary judgment. (ECF Nos. 28, 31.) For the reasons that follow, Defendant's motion is granted and Plaintiff's motion is denied.

   **I.**     **BACKGROUND**

From September 2010 until the fall of 2021, Plaintiff worked for Merck as a biotechnician in Department 245, where he was primarily responsible for growing, harvesting, and storing live virus cells to manufacture vaccines. (ECF No. 32-2 at 31-32, 35, 83.) In that role, Plaintiff was represented by the United Steelworkers Union Local 10-00086 ("the Union"). The terms and conditions of Plaintiff's employment were governed by a collective bargaining agreement ("CBA") negotiated between Merck and the Union. (ECF No. 32-4.)

A biotechnician's role includes "[h]andl[ing] live organisms and chemical substances" using "[s]terile technique." (ECF No. 32-10 at 5.) To ensure compliance with its directives, Merck

maintains Standard Operating Procedures ("SOP"), including SOP-16283, which includes monitoring to ensure the maintenance of sterile environments and responding to tests that reveal unacceptable contamination. (ECF No. 32-11.) SOP-16283 requires biotechnicians whose work requires them to enter sterile gowning areas to undergo routine testing using Replicate Organism Detection And Counting ("RODAC") plates. These tests identify any contamination after an employee dons a gown and before they enter a sterile environment. (ECF No. 32-5 at 66-67; ECF No. 32-2 at 54-55.) An "excursion" occurs when a RODAC test reveals contamination by micro-organisms on a biotechnician's sterile gown or gloved hands. (ECF No. 32-11 at 27; ECF No. 32-5 at 64). As relevant here, SOP-16283 requires that, if a biotechnician fails RODAC testing six times within a year, they be disqualified from working in the sterile area for a year and then retrained. (ECF No. 32-11 at 27, 34.)

In August 2021, after having accumulated six excursions in a year, Plaintiff was excluded from working in the sterile area for one year pursuant to SOP-16283. (ECF No. 32-2 at 44-45; ECF No. 32-5 at 74-75.) Once he was excluded from the sterile core, Plaintiff was only able to perform around 30% of his tasks as a biotechnician. (ECF No. 32-14 at 3.) Given Plaintiff's inability to perform most of the work in Department 245, Defendant decided to give him the opportunity—pursuant to the CBA—to "bid" on, or apply to, open positions in the bargaining unit for which he was qualified. (ECF No. 32-2 at 117-119.) The CBA also contains a "flex flow" procedure, which gives Merck the ability to temporarily move an employee to another department based on business needs, subject to requirements in the CBA. (*Id.* at 119.) If Plaintiff did not successfully bid into a new role by the end of 2021, he would be flex flowed to a department that did not require sterile gowning until his disqualification was over. (ECF No. 32-5 at 59-61, 82-83.)

On September 14, 2021, Plaintiff filed a grievance regarding his supervisor, Paul Jackson ("Jackson"), stating that "Jackson is creating a hostile work environment for me by targeting me where by [sic] he reserves condescending remarks for me but none for my workmates that I pair with for work." (ECF No. 32-7 at 2.) During his deposition, Plaintiff testified that there were five incidents that formed the basis for his September 14 grievance. As relevant here, Plaintiff alleged that, at a staff meeting on July 25, 2021, Jackson was handing out schedules to employees and forgot to give one to Plaintiff, which Plaintiff alerted Jackson to. (ECF No. 32-2 at 68.) According to Plaintiff, Jackson responded by "[coming] close to me, next to my ear, and he whispered, 'I don't know how I missed to give you a schedule because I use your voice to know where you are standing . . . You have a voice that is very specific to me." (*Id.*)

On November 13, 2021, Plaintiff filed a grievance asserting that overtime was not being distributed in accordance with the CBA. (ECF No. 32-17.) Four days later, Plaintiff met with his union shop steward, along with Jackson and another supervisor, and discussed Merck's decision to permit Plaintiff to bid into another position or be temporarily flex flowed until the end of his disqualification from the sterile area. (ECF No. 32-16.) Following this meeting, Plaintiff declined to bid on any positions. (ECF No. 32-3 at 17.)

On November 19, 2021, Plaintiff filed a grievance arguing that his alleged decrease in overtime shifts and impending flex flow was in retaliation for his September grievance regarding Jackson. (ECF No. 32-18 at 2.) The following day, on November 20, Plaintiff filed another grievance complaining about the same issues, but this time, he alleged that Defendant's actions were based on Plaintiff being "of African descent." (ECF No. 32-19 at 2.) On March 27, 2022, Plaintiff was flex flowed to Department 241, where the majority of work does not need to be performed in a sterile environment. (ECF No. 32-3 at 55.)

On June 5, 2022, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") (ECF No. 32-38), and on September 30, 2022, the EEOC issued a Dismissal and Notice of Rights (ECF No. 32-39). Meanwhile, Plaintiff returned to Department 245 in August 2022 when he was eligible to requalify to work in the sterile area. (ECF No. 32-3 at 135.) Plaintiff remained in Department 245 until January 2023 when he bid into a role in another department, where he remains today. (ECF No. 32-13 at 140.)

As a result of the alleged "harassing behavior and hostile work environment" that Defendant "subjected" him to, Plaintiff claims he has developed anxiety disorder. (ECF No. 10 at ¶ 74.) He also alleges that he has suffered "both economic and non-economic damages as a direct and proximate result of Merck's and Mr. Jackson's retaliation against him." (*Id.* at ¶ 90.)

After discovery was completed, Plaintiff moved for summary judgment on Count I (retaliation) of his Amended Complaint (ECF No. 28), which has been fully briefed (ECF No. 33). Subsequent to Plaintiff's filing, Defendant moved for summary judgment on Count I as well as Count II (hostile work environment) (ECF No. 31), which has also been fully briefed (ECF Nos. 35, 36).

## II.    LEGAL STANDARD

The standard for assessing motions for summary judgment is well-settled. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In making this determination, "'[a]ll reasonable inferences from the record must be drawn in favor of the nonmoving party' and the court 'may not weigh the evidence or assess credibility.'" *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (quoting *MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204, 209 (3d Cir. 2005)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could hold in the nonmovant's favor with respect to that issue. *Id.*

Here, the Court has been presented with cross-motions for summary judgment by both parties. The summary judgment rules do not apply any differently to cross-motions. *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008). "'Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Id.* (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). If, upon review of cross-motions for summary judgment, the Court finds no genuine dispute over material facts, then judgment will be entered in favor of the party deserving judgment considering the law and undisputed facts. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

### III.    DISCUSSION

Title VII "proscribe[s] discrimination in employment based on several personal characteristics," including race, color, religion, sex, or national origin. *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015). Of the numerous grievances that Plaintiff filed, there are only two that mention conduct proscribed by Title VII: the November 19 grievance regarding

sexual harassment and the November 20 grievance regarding racial discrimination. As to the latter, while Plaintiff's original Complaint alleged discrimination and harassment based on race (ECF No. 1 at 6), his Amended Complaint does not, and thus, he appears to have abandoned this claim. Therefore, the Court only addresses Jackson's alleged conduct at the July 25, 2021 staff meeting, which constitutes the basis for Plaintiff's November 19 grievance.

In his motion for summary judgment, Plaintiff argues that, by Jackson stating at the staff meeting that "he was surprised he had skipped him since Mr. Nyamu's voice ***is so distinctive***," Plaintiff "objectively believed that this comment was inappropriate and racist because [he] is from Africa and speaks with a heavy accent." (ECF No. 28-1 at 11.) Plaintiff also claims that he "objectively believed that the act of leaning in to whisper in his ear was inappropriate and sexual harassment." (*Id*.)

### A. Retaliation (Count I)

As to Count I, Plaintiff claims that, in retaliation for complaining about Jackson, Defendant transferred him "from Dept. 245 [] where he was fully trained and worked overtime, to Dept. 241, where he was not trained and precluded [sic] doing any actual work, let alone working overtime." (ECF No. 28-1 at 15.)

Plaintiff's retaliation claim proceeds under the three-step, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). Under the burden-shifting framework, Plaintiff must first establish a prima facie case of retaliation by showing: (1) he engaged in a "protected employee activity"; (2) he suffered an "adverse action by the employer either after or contemporaneous with the employee's protected activity"; and (3) a "causal connection" exists "between the employee's protected activity and the employer's adverse action." *Id.* If Plaintiff establishes a prima facie case,

the burden shifts to Defendant to "articulate some legitimate, non-retaliatory reason for the adverse employment action." *Id.* If Defendant succeeds in articulating a legitimate and non-retaliatory reason, the burden shifts back to Plaintiff to show "that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id.* (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006)).

Plaintiff must fulfill the initial step of the *McDonnell Douglas* analysis by establishing a prima facie case of retaliation. The second element of the prima facie case—that Plaintiff suffered adverse action either after or contemporaneous with his protected activity—is not in dispute. But the remaining two elements—that Plaintiff engaged in protected activity and that there was a causal connection between Plaintiff's protected activity and the employer's adverse action—are disputed.

An employee engages in protected activity when he "(1) participates in Title VII proceedings or he (2) opposes what an employee reasonably believes to be conduct that is unlawful under Title VII." *Jenkins v. Ciocca Mgmt., Inc.*, 762 F. Supp. 3d 416, 432 (E.D. Pa. 2025). This includes "not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). Plaintiff alleges that he engaged in protected activity when he complained about Jackson's behavior at the staff meeting.

As a preliminary matter, Plaintiff "must hold an objectively reasonable belief, in good faith, that the activity [he] oppose[d] is unlawful under Title VII." *Moore*, 461 F.3d at 341 (citation omitted). "To put it differently, if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not

protected." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008). The Third Circuit has indicated that repeated inherently derogatory terms directed at a plaintiff may support an objectively reasonable belief of a Title VII violation. *Daniels*, 776 F.3d at 194 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)) (*per curiam*). The Supreme Court has explained, however, that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not support a retaliation claim. *Breeden*, 532 U.S. at 270.

Thus, the question here is: "Could a reasonable person, standing in [Plaintiff's] shoes, have believed that [Jackson's] behavior violated Title VII?" *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021). The answer is no. Not only is a voice being "distinctive" not inherently derogatory, but Jackson allegedly whispering the comment into Plaintiff's ear was "at worst an 'isolated inciden[t]' that cannot remotely be considered 'extremely serious,' as our cases require." *Breeden*, 532 U.S. at 271 (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)). Contrary to Plaintiff's contention, his subjective belief that Jackson's behavior violated Title VII does not suffice for his complaint to qualify as protected conduct. *See Curay-Cramer*, 450 F.3d at 137 ("[The plaintiff's] subjective state of mind is . . . irrelevant for purposes of determining whether she engaged in protected conduct."). Moreover, it could be reasonably determined that Jackson's alleged act of whispering the comment was an attempt to be discrete or considerate.

Accordingly, the Court grants summary judgment in favor of Defendant on Count I and denies summary judgment against Plaintiff on the same.

### B. Hostile Work Environment – Sexual Harassment (Count II)

In viewing Count II, to substantiate a hostile work environment claim based on sexual harassment, Plaintiff must show he (1) suffered intentional discrimination because of his sex, (2)

the discrimination was severe or pervasive, (3) the discrimination detrimentally affected him, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability. *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

"Title VII is not intended as a 'general civility code.'" *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 155 (3d Cir. 2016) (quoting *Faragher*, 524 U.S. at 788). Instead, a hostile work environment claim is only actionable "'when the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to . . . create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mandel*, 706 F.3d at 168 (internal quotation marks and citations omitted).

Regarding the first element of Plaintiff's hostile work environment claim, Defendant argues in its Motion that "[t]here is no evidence from which a factfinder could infer that any of Jackson's alleged conduct was because Nyamu (like Jackson) is male." (ECF No. 31-1 at 29.) Defendant also argues that, regarding the second element, "[t]he conduct about which Nyamu complains was not severe or pervasive." (*Id.* at 30.) Plaintiff does not directly respond to either of Defendant's assertions, instead stating that "the mere act of leaning in close to an employee to whisper in his ear is an inappropriate invasion of Mr. Nyamu's personal space," and that "telling Mr. Nyamu, who speaks with a heavy African accent, that he has a distinctive voice, is even more inappropriate." (ECF No. 35 at 25.) Because Plaintiff's Amended Complaint only asserts sex, not

9

race or national origin, as the basis for his hostile work environment claim (ECF No. 10 at 9), the Court cannot and does not consider whether Jackson's conduct was related to Plaintiff's accent. *See Diodato v. Wells Fargo Ins. Servs., USA, Inc.*, 44 F. Supp. 3d 541, 559 (M.D. Pa. 2014) ("It is well-settled that [a plaintiff] may not amend his complaint in his brief in opposition to a motion for summary judgment.") (quotation omitted); *Duran v. Merline*, 923 F. Supp. 2d 702, 723-24 (D.N.J. 2013) (finding summary judgment appropriate on access to courts claim when plaintiff attempted to cite two additional instances of misconduct in opposition brief which were absent from plaintiff's complaint).

The Court does not find Jackson allegedly whispering into Plaintiff's ear at the staff meeting to be related to Plaintiff's sex, nor does it find that the act of whispering in this context and on this singular occasion to be severe or pervasive. No reasonable trier of fact could infer a sexual advance from a whisper along with the statement allegedly attributable to Jackson during the meeting. Moreover, the record is devoid of any statements, gestures, or instances of physical contact from Jackson that take on or suggest sexual connotations or would suggest that Jackson had a sexual interest in Plaintiff. While Plaintiff has his own perception and conclusion about the meeting in question, this perception and conclusion, as seen by the Court, lack any details or context connecting the interaction to Plaintiff's sex.

In short, while Jackson's conduct may have arguably invaded Plaintiff's personal space and caused him to suffer some degree of discomfort, "these types of allegations, without reference to [Plaintiff's] gender, do not support a gender-based hostile work environment claim." *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 685 (E.D. Pa. 2016) (citing *Hegyes v. U.S. Steel Corp.*,

2007 U.S. Dist. LEXIS 5368, at *13 (W.D. Pa. Jan. 25, 2007)). Accordingly, the Court grants summary judgment in favor of Defendant on Count II.[1]

## IV.    CONCLUSION

For these reasons, Defendant's motion for summary judgment is granted as to Counts I and II, and Plaintiff's motion for summary judgment is denied as to Count I. An appropriate Order follows.

BY THE COURT:

/s/ Kelley B. Hodge

_____
HODGE, KELLEY B., J.

---

[1] The Court acknowledges Defendant's arguments that (1) Count I is preempted under Section 301 of the Labor Management Relations Act; and (2) Plaintiff failed to exhaust his administrative remedies with regard to events occurring after May 23, 2022. (ECF No. 31-1 at 11-15.) However, in light of the Court's dispositive determination on the cross-motions before it, the Court need not address these arguments.